**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

      **v.**                                **Cr. Nos. 04-446-23, 49, 51 (TFH/JMF)**

**JORGE ENRIQUE RODRIQGUEZ MENDIETA,**
**ERMINOS CUEVAS CARBERA,**
**JUAN JOSE MARTINEZ VEGA,**

      **Defendants.**

**MEMORANDUM ORDER**

I have been assigned to supervise discovery in this case and the situation pertaining to the government's production of documents is troubling.

The government has made a production of documents received from the government of Colombia or otherwise in its possession to the defendants.  We have ascertained that any attempt to scan the documents into digital form and then search them using optical character recognition would be fruitless; such an effort was made and failed and no one can see any better way to do it. Thus, the only guide to the contents of the documents is an index that has been prepared by DEA and other agents working on the case who can read the documents in Spanish. While the index is in English, the documents are in Spanish and the lawyers for the three defendants have differing capabilities in translating Spanish into English.  The hope has always been that the index would enable the lawyers to quickly ascertain which of the documents are, in the language of Rule 16 of the Federal Rules of Criminal Procedure, "material to preparing the defense."  Unfortunately, the parties do not agree that the index that has been provided is sufficient.

More specifically, in a letter dated November 18, 2008 (Document #61-3) the United

States produced, in accordance with the Court's order, an index to the documents produced to date and a list of documents to be translated.  The defendants point out in a letter sent three days later that this means that the government will translate 923 of the 10,809 pages they received, meaning that the government will not translate the remaining 9,886 documents from Spanish to English.  As to those, the defendants will have to derive their contents and their consequential relevance, materiality, and potentially exculpatory nature from the index.

 In a letter dated November 21, 2008 (Document #61-2), the defendants point to deficiencies in the index that include: (1) establishing the relationship between one of the defendants and the documents is inconsistent from entry to entry; (2) the Spanish captions for the documents are generic words like "notebook," "copy" and "annex" and provide little or no guidance as to the actual contents of the documents themselves; (3) hundreds of pages are "lumped" into a single document with little or no guidance as to the contents of the accumulation. Id. at 2-3.  Defendants then specify how the index should be corrected and amplified to meet their needs. Id. at 3.

While the government has not yet replied to the defendants' recent filings, defendants represent to me that at a hearing before Judge Hogan, government counsel stated that the index is sufficient, that the government was not required to produce it in the first place, and that the government will not be supplementing it.

An impasse has therefore been reached as to the sufficiency of the index and I view further discussion of that topic to be wasteful.  Continuing to battle over the sufficiency of the index will lead only to my having to review it entry by entry and I may have to review the documents themselves to judge the sufficiency of the index.  I, unfortunately, do not read Spanish and I will then be in the position defendants' counsel are in and we will have made no progress.

While I could review the sufficiency of each entry abstractly, I must say at this point I find the

defendants' criticism of the lack of specificity of the entries well taken. If, upon further review, I

were to persist in that view, the remedy would be more specificity, which would probably lead to

more litigation about the sufficiency of the index.

There is no question that this Court conducts its proceedings in English. Even if every

person in the courtroom were fluent in Spanish proceedings would still have to be conducted in

English. Thus, at some point, the documents that the parties will use to make their case will need

to be translated. It has been my hope and, I presume, the hope of the parties, that we could

reduce the burden, which will be borne by the taxpayer, of translating these voluminous

documents because the attorneys could consult an appropriately detailed index to determine

which documents likely contained information important to the case. It has become apparent,

however, that is not the case, and I do not see the benefit of delaying the resolution of the case by

litigating the sufficiency of a device that was only intended to make things easier.

I think there is a better and simpler approach–require the government to translate all the

documents into English. First, the translation of the documents into English will create

documents, produced by word processing, that can then be easily searched. The ability to search

the documents by keyword or concept may eliminate the need for an index. The ability to search

them using commercially available software creates a perfectly level playing field.

Second, while this will be expensive, English is the official language of this Court and the

language that proceedings in this case must be conducted in that language. The government is

under obligations imposed by the Constitution[1] and Rule 16 of the Federal Rules of the Criminal

Procedure to make information available to the criminal defendants in this case, and dumping

---

[1]See Brady v. Maryland, 373 U.S. 83(1963).

voluminous documents in another language in their lap does not comply with this requirement.

Cf. United States v. Archbold-Manner, 577 F. Supp. 2d 288, 291 (D.D.C. 2008) ("Simply

providing a non-redacted document in a foreign language clearly does not comply with the

Court's specific order to provide the identities of investigating agents.").  Further, as a practical

matter, the taxpayer will have to pay for it one way or another.  If the Department of Justice will

not pay for this willingly I may be forced to sign a voucher permitting the defendants to retain a

translator for the documents, thereby devoting a most substantial portion of the Criminal Justice

Act budget to this one case, and I may thereby create a financial emergency for the Court's other

Criminal Justice Act cases.  Imposing the cost on the government that brought this prosecution in

the first place makes much more sense than victimizing other indigent defendants who, in this

sense, are blameless and as entitled as these defendants to public funds to mount a defense.

Third, this is a significant and complicated prosecution to which the government has

already devoted substantial resources.  As the matter now stands, it has produced 9,886

documents in a foreign language to lawyers who have limited capability to read them and less to

translate them. While the government may wish to roll the dice that a court will someday hold

that it nevertheless fulfilled its discovery and *Brady* obligations, there is a discernible trend in the

case law that such an undifferentiated dump of information is not a fulfillment of those

obligations. See e.g. United States v. Skilling, _____ F.3d ___, 2009 WL 22879 at *38 (5th Cir.

Jan. 6, 2009) (dictum that padding a file of turned over material with useless information to

frustrate the defendant's review might violate *Brady* obligation as would "[c]reating a

voluminous file that is unduly onerous to access."); United States v. Hsia, 24 F. Supp. 2d 14, 29-

30 (D.D.C. 1998) ("The government cannot meet its *Brady* obligations by providing [the

defendant] with access to 600,000 documents and then claiming that she should have been able

to find the exculpatory information in the haystack."; government obliged to specifically identify

*Brady* material."), rev'd in part and appeal dismissed in part on other grounds, 176 F.3d 415

(D.C. Cir. 1999), cert denied, 528 U.S. 1136 (2000). Compare United States v. Ferguson, 478 F.

Supp. 2d 220, 241-42 (D. Conn. 2007) with Emmett v. Ricketts, 397 F. Supp. 1025, 1043 (N.D.

Ga. 1975).

While I cannot make tactical decisions for the government, this authority certainly

suggests that it is a penny wise and pound foolish to risk reversal of any conviction obtained in

this case because the documents were not translated into English and the index was insufficient.[2]

Finally, the government has the ability to lessen the expense. Its agents,[3] who can read

Spanish, can help its counsel make an initial cut on whether certain documents are so immaterial

and irrelevant and so unlikely to be exculpatory that there is no need to produce them. If it keeps

the excluded documents available and makes principled decisions as to what it is not turning

over, it will have a defensible record to beat back any defense claim.

Therefore, the government is, hereby,

**ORDERED** to translate into English all documents previously produced in Spanish that

(1) are the documents it intends to introduce into evidence; (2) are material to the defense or (3)

would tend to exculpate the defendants. It is further,

**ORDERED** that counsel for the parties immediately consult with each other and arrive at

a written agreement that has as its purpose making sure that the translated documents are

produced in such a way that they can be marshaled into a database that can be searched by

---

[2]Note that there are 50 defendants in this case and it makes sense to do this now rather than wait any longer.

[3] The government can also fulfill its obligation by retaining a vendor to translate the documents. In that case, concerns about the burden on law enforcement would be obviated.

software that defense counsel already owns or that is commercially available.

Finally, a status conference will be held on March 2, 2009 at 9:30 am to discuss the

government's progress in completing the responsibilities imposed by this Order.

**SO ORDERED.**


_____/S/_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE


Dated: January 28, 2009