IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | Crim. No 04-446-51 (TFH) |
| | : | |
| JUAN JOSE MARTINEZ VEGA | : | |

DEFENDANT JUAN JOSE MARTINEZ VEGA'S RESPONSE TO
GOVERNMENT OPPOSITION TO HIS MOTION TO
DISMISS CASE DUE TO PROSECUTORIAL MISCONDUCT

Defendant, Juan Jose Martinez Vega, (hereinafter Defendant or Defendant Martinez), through undersigned counsel, responds to the Opposition of the United States to his Motion that this Court dismiss his case due to prosecutorial misconduct concerning the production of voluminous documents in Spanish as follows:

I. THE ISSUE

1. As part of the discovery process, the United States provided the defendants with 10809 pages of documents in Spanish.[1] On November 17, 2008, Mr. Randall Jackson, Esq., the Assistant United States Attorney currently representing the United States in this case, provided the defendants with a letter identifying 923 pages of those documents which the United States intended to translate into English. That same date, he provided an "index" of the Spanish documents, which the defendants complained was inadequate to provide them a meaningful guide as to the contents of the remaining

---

[1] The documents are Bates stamped 1000 – 11808; the United States reserved numbers 0001 through 0999.

1

documents which the United States did not intend to translate.[2]

2. Unwilling to resolve the disputes about the "index," on January 28, 2009, Magistrate Judge Facciola, to whom this Court referred the case to regulate the discovery process, ordered the United States "to translate into English all documents previously produced in Spanish that (1) are the documents it intends to introduce into evidence; (2) are material to the defense or (3) would tend to exculpate the defendants." The United States did not produce any further translations, except as it believed were relevant to its own case.[3] At the March 12, 2009 hearing before this Court, Mr. Jackson represented that the remainder of the roughly 10,000 pages of Spanish language documents which he had provided were neither exculpatory nor material to the preparation of the defense, that they were indeed "completely irrelevant." Given that representation, this Court ruled that the United States had complied with Magistrate Judge Facciola's Order.

3. Defendant has filed a motion seeking dismissal of the indictment on the basis of prosecutorial misconduct.[4] The heart of Defendant's Motion was:

> 11. As Defendant views this matter, there are only two plausible scenarios. One such scenario is Mr. Jackson was telling the truth on March

---

[2] None of the counsel initially appointed to represent defendants are fluent in Spanish. While the Court recently appointed Mr. Manuel Retureta, Esq., a bilingual attorney, to act as consulting counsel for Mr. Cuevas Cabrera, neither undersigned counsel and Ms. Joanne Slaight, Esq., appointed counsel for Mr. Rodriguez Mendieta, are fluent in of Spanish, although both have some understanding of the language.

[3] The United States did translate some additional documents, but this appears to have been the function, not of new review, but rather a misprint in the letter of November 18, 2008. That letter stated that among the documents the United States would translate were Bates-stamped pages 6707 and 6751-7108, which were documents related to the search of property belonging to "Mincho" (presumably Codefendant Cuevas); however, the intervening pages, 6708 through 6750 were also related to the same topic.

[4] The other defendants have joined this Motion.

12, 2009 when he stated that roughly 10,000 pages of Spanish language documents not translated by the government were indeed "completely irrelevant." The problem with this scenario is that it means that Mr. Jackson not only previously misrepresented the nature of the 10,000 pages when he described them as "discoverable" and "material to the preparation of the defense," but also that he essentially "dumped" 10,000 pages of "completely irrelevant" documents on the defense, presumably to have them waste their time and energy on documents of no value. The other scenario is that when confronted with an order to translate all or most of the documents, after having stubbornly refused to provide a meaningful index, and facing extraordinary costs (estimated by the United States at $800,000), Mr. Jackson simply lied about the relevance of the documents. Either scenario involves a deliberate misrepresentation to the Court, and in Defendant's view warrant a dismissal based upon prosecutorial misconduct. (Motion at 5-6)[5]

4. The United States in its Opposition takes several positions. It suggests that Defendant's "two plausible scenarios" argument was premised "on a obvious misstatement of the record." It suggests that "(a)t no point did the Government state that the 10,000 pages of Bates stamped discovery delivered in 2008 were 'material to the preparation of the defense,'" and contends that Defendant failed to give enough emphasis to the use of the word "could" in Mr. Jackson's representation at the August 12, 2008 hearing before Magistrate Judge Facciola that the majority of the documents "we believe **could be relevant** to the preparation of the defense, and I think that's the Rule 16 basis under which we're primarily turning them over," (Govt. Oppn. at 64,

---

[5] Defendant conceded in his Motion that, at least in theory, there was a third scenario, that between January 28, 2009, the date of Magistrate Judge Facciola's Order and his appearance in court on March 12, 2009, that Mr. Jackson personally reviewed each of the roughly 10,000 pages and was able to articulate a reason why some, as yet unexplained, change in circumstances caused him to change his original representations and coincidentally, decide that each and every page was no longer relevant. The United States acknowledged this alternative scenario (Govt. Oppn. at 65), but, significantly did not assert that this had been the case.

emphasis in original). The United States suggests that correct "context" for Mr. Jackson's comments was:

> As is clear from the transcript excerpts quoted above, the Government consistently described a process by which it was: (1) initially delivering as wide a swath as possible of the documents it had received from Colombia in response to an MLAT transmitted by the U.S. Government; (2) engaging in a more detailed review process in order to craft an index that would assist the defendants in reviewing the 10,000 documents; and finally (3) identifying and translating the subset of the documents that either would likely be used in the Government's case in chief or that the Government predicted could be possibly material to the preparation of the defense. (See Aug. 12, 2008 Tr. at 5; Mar. 12, 2009 Tr. at 36-37).
>
>     In sum, the record in this demonstrates that the Government stated only that the 10,000 documents were produced under the theory that there was a possibility that they constituted material relevant to the preparation of the defense. Subsequently, the Government provided the defendants with electronic, searchable[6] versions of the documents and an index in order to aid the defendants in making their own determinations. The record is that of a normal discovery process, involving a gradual narrowing of the materials that might be used at trial. (Govt. Oppn. at 64-65)

The United States also suggests that its conduct did not constitute "prosecutorial misconduct," and even if did, dismissal is the wrong remedy.

5. Leaving aside the legal issues involving the question of an appropriate sanction, it appears that the United States continues to take the position that all of the untranslated documents are not "material to the preparation of the defense," or in Mr. Jackson's words – are "completely irrelevant." Assuming this to be true for purposes of

---

[6] This is simply not true. Although the United States eventually provided the Spanish Bated documents in an electronic format, such format is <u>not</u> searchable.

this Motion,[7] the central question is <u>when</u> the United States realized that it had provided defendants with nearly 10,000 pages of documents in a foreign language that were, in fact, nothing more than a distraction – a complete waste of time - to the defendants in their efforts to prepare a defense to this complex case.

II. THE NEED FOR A HEARING ON THE FACTUAL RECORD

    6. For the reasons set forth below, Defendant contends that the record shows the events in this case were far from the "normal" discovery process. There are many relevant questions left unanswered. Moreover, some of the assertions in the Government's Opposition seems dubious. To the extent that the Court needs a <u>complete</u> factual record in order to determine whether the United States has acted in good faith, Defendant is <u>unwilling to accept a mere proffer</u> on the part of Mr. Jackson, or any other government agent, as to the actions of the United States and its agents.

    7. The case was indicted in 2004. Defendant concedes that it may have been reasonable for the United States to allow the case to remain inactive until at least one defendant was approved for extradition; however, Defendant Cuevas has been before this Court since September of 2007, and Defendant Rodriguez since November of 2007. Indeed, counsel for Defendant Cuevas started demanding discovery on October 23,

---

[7] Frankly, Defendant doubts the truth of this assertion. The government contends that it has identified the documents that specifically implicate the named defendants. That may be so, but on behalf of the United States, Mr. Jackson has announced that the government intends to present a wide-ranging case, including numerous expert witnesses. Counsel for Defendant has repeatedly urged the Court to impose a deadline for a <u>complete</u> Rule 16 disclosure of expert witnesses, as well as a disclosure of any additional criminal activity, not charged as overt acts. To date, the Court has declined to do so. When it does, it may appear that there are documents which are material to the defense, to include documents the government must have known would be material.

5

2007. Thus, the United States has had ample time to properly produce legitimate Rule 16 discovery.

8. The United States represents that the documents in question were received as a result of a MLAT (Mutual Legal Assistance Treaty) request from the United States government to the Colombian government. The United States has not disclosed the <u>terms</u> of that request, but the more broadly worded the request, the more the United States should have been aware of the likelihood that irrelevant documents would be produced. The United States also does not disclose <u>when</u> the MLAT request was made and when the documents were received.[8] These facts are relevant because, at the August 12, 2008 hearing before Magistrate Judge Facciola, Mr. Jackson represented that Spanish speaking law enforcement agents were reviewing the documents received from Colombia, <u>page by page</u>, while making decisions about which documents were, or were not, "discoverable." Mr. Jackson communicated no indication that this deliberative process was being rushed in any way.

9. This review process was the first stage in the review that the government agents conducted. Defendant understands that at the "edges" the relevance or materiality of a document may be unclear, and that it would be unsurprising if there was some percentage of documents which might have been initially determined to be relevant, but later turned out not to be. In this case, however, <u>every single one</u> of nearly 10,000 documents not translated by the United States turned out to be irrelevant. The

---

[8] On April 23, 2009, Defendant Cuevas requested copies of the MLAT requests in this case and the responses. Not surprisingly, the United States has ignored this request..

6

Court may legitimately question what "decision criteria" for initial discovery was being applied in these circumstances.

    10. It is significant, in Defendant's view, that Mr. Jackson not only used the word "discoverable" at the August 12, 2008 hearing, but also again when questioned by Magistrate Judge Facciola on December 9, 2008, as to whether the government had "completed the delivery of all documents, regardless of whether the documents will be used in the case in chief or <u>material to the defense</u>," (emphasis added). Mr. Jackson replied, "(t)he government has delivered , Your Honor, <u>all of the Rule 16 discovery</u> that it is presently aware of, that it would contemplate delivering to the defendants, and all of those materials were Bates stamped." The choice of the word "discoverable" certainly implies that deliberate decisions were being made as to which documents the United States <u>was</u> required to disclose to the defendants. Defendant thinks it relevant that Mr. Jackson gave no indication that the flood of documents would contain documents that were irrelevant.

    11. The United States suggests that there were two additional periods of review: "a more detailed review process in order to craft an index that would assist the defendants in reviewing the 10,000 documents," and a review conducted with the purpose of "identifying and translating the subset of the documents that either would likely be used in the Government's case in chief or that the Government predicted could be possibly material to the preparation of the defense." (Govt. Oppn. at 64-65). Because the government's "index" and letter listing the documents it intended to translate were <u>both</u> sent on November 17, 2008, several points become clear. First, there were not two

7

successive reviews – one for purposes of compiling the index and one for purposes of identifying the documents to be translated. These "reviews" appear to have been conducted simultaneously, presumably as one review. Secondly, this review was apparently completed by November of 2008.  The United States makes no claim that any additional review of the documents was conducted after that date, to include <u>after</u> Judge Facciola's order of January 28, 2009. The logical conclusion is that the United States knew, as of November 2008, that some 10,000 pages of Spanish language documents it had turned over to defendants were "completely irrelevant." In determining whether the United States acted in good faith, it is important to consider the record of the government's conduct <u>after</u> sending out the index and letter of documents to be translated.

    12. On November 21, 2008, counsel for Defendant sent Mr. Jackson a five page letter concerning his objections to the index and requesting a much more complete index. This would, of course, have been the perfect opportunity for the United States to inform the defendants that a detailed index was unnecessary because the remaining documents were irrelevant. Instead, the United States remained silent. It was on December 9, 2008, that Mr. Jackson, instead of informing the defendants of the irrelevant nature of the documents, represented that the government had delivered "<u>all of the Rule 16 discovery</u> that it is presently aware of, that it would contemplate delivering to the defendants." Since the United States had already identified the documents that it wanted translated, and would presumably use in its case in chief, the

defendants could fairly infer that the remaining documents were at least "material to the preparation of the defense."

13. Then, at the hearing held before this Court on January 15, 2009, counsel for Defendant again requested that the United States be ordered to comply with the requests in the November 21, 2008 letter. In response, Mr. Jackson did not alert the Court and counsel that the documents at issue were irrelevant; instead he stated that it was the position of the United States that Federal Rule of Criminal Procedure 16 did not require an index, that the United States had fulfilled, even exceeded, its legal obligations and implied that the United States would not voluntarily provide more detail about the discovery.[9]

14. In response to this assertion, undersigned counsel filed several memoranda with the Court concerning the issue. The first memoranda, dated January 16, 2009, cited authority for the proposition that a District Court can direct the government to provide <u>more</u> discovery than Rule 16 requires, and again requested the more complete index requested in counsel's letter of November 21, 2008. The United States remained silent again.

15. Then, on January 26, 2009, counsel for Defendant filed yet another motion, this one citing the case of *United States v. Skilling,* 554 F.3d 529, 577 (5th Cir., 2009), the prosecution of Jeffrey Skilling for his role in the Enron collapse, in which the Fifth Circuit acknowledged that "padding" an open file with "pointless or superfluous

---

[9] Counsel has ordered that transcript, but as of the date that this motion is filed, the court reporter, Ms. Jones, is <u>refusing</u> to prepare the transcript, claiming other priorities.

9

information" to frustrate review or creating a voluminous file that is "unduly onerous to access" could raise a *Brady* issue. This, one would assume, would have been an appropriate time for the United States to come forward and inform defendants that the documents in question were irrelevant, but, of course, again it did not do so.

16. It was not until a hearing before Magistrate Judge Facciola on March 9, 2009, that the United States first indicated that it believed that it had no obligation under Magistrate Judge Facciola's January 28, 2009 to translate any further documents:

> I think that it's our position that because we've been able to identify the documents that are most relevant to each of the defendants, because we are going to be delivering a searchable Spanish format of the entire database,[10] and because we are delivering English translations of all the documents that we think are conceivably relevant to the case-in-chief, that we intend to put on and are material to the defendants, that will be helpful to their defense,[11] or that constitute *Brady* material, we don't need to translate the remainder… (Tr. 3/9/09 at 6-7).

Because this formulation was ambiguous, given the very broad scope of "material to the preparation of the defense," and because the government had yet to divulge the scope of its expert testimony, counsel for Defendant declined to accept Mr. Jackson's "certification" that none of the remaining documents were "material to preparation of the defense" or constituted exculpatory material. (Tr. 3/9/09 at 26-28).[12]

---

[10] This statement was <u>not</u> true; no such searchable database has ever been produced.

[11] One reading of Mr. Jackson's comment would be that he considers evidence "material to the preparation of the defense" as only applying to material that is exculpatory to the defense; however, the court in *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir.,1998) noted, "(i)nculpatory evidence, after all, is just as likely to assist in "the preparation of the defendant's defense" as exculpatory evidence. In other words, it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths." (footnote omitted).

[12] Of course, Mr. Jackson's unequivocal representation, before this Court on March 12, 2009, that all of the remaining documents were "completely irrelevant" removed those ambiguities.

17. Thus, time after time, the United States passed up an opportunity to inform the defendants that it had greatly miscalculated and had provided them with 10,000 pages of irrelevant material – certainly a course of conduct not consistent with "good faith." Moreover, it also seems exceedingly strange to Defendant that, having apparently decided in November of 2008 that the remaining documents were irrelevant, that United States would engage a contractor to study the costs of <u>complying</u> with Magistrate Judge Facciola's Order of January 28, 2009. For all of these reasons, Defendant asserts that the factual record of the conduct of the United States as regards the Spanish language documents is far from clear and that an evidentiary hearing is required.

III. LEGAL CONSIDERATIONS.

    A. Prosecutorial Misconduct

18. The United States apparently argues that as a legal matter, there has been no prosecutorial misconduct. In making this argument, the United States relies on the absence of precedent (Govt. Oppn at 66). This argument, however, also relies on the <u>factual</u> basis previously advanced by the United States – that the United States was only "delivering to defendants far in advance of trial a wider set of materials than they find useful," or "narrowing the universe of documents that the Government believes are important," (Govt. Oppn at 66-67). Since Defendant vigorously disputes this categorization of the events, this, in turn, makes establishing a complete factual record necessary.

19. While is true that there is no case which directly involves the same precise factual situation, if the facts are as Defendant suggests – that the United States deliberately "dumped" nearly 10,000 pages of "completely irrelevant" documents in a foreign language, while suggesting that they contained "discoverable" material, on the defendants - there are strong suggestions that a court would consider this to be prosecutorial misconduct. *See, United States v. Skilling, supra. Accord, United States v. Hsia*, 24 F.Supp.2d 14, 29-30 (D.D.C. 1998) (*Brady* not satisfied by granting access to 600,000 documents and expecting the defendant to find the exculpatory material in the "haystack.")[13]

20. Certainly, in the civil arena, a party who deliberately "dumps" useless documents in the course of discovery would be subject to sanctions. *See, Wagner v. Dryvit Systems, Inc.,* 208 F.R.D. 606, 610 (D. Neb. 2001) ("providing false or incomplete discovery responses violates the Federal Rules of Civil Procedure and subjects the offending party and its counsel to sanctions."); *Fox v. Kitsap County,* 2008 WL 570812 (W.D. Wash. 2008) (court finds "dump-trucking" hundreds of pages of documents can warrant dismissal with prejudice); *John W. Daniel and Co., Inc. v. Durham Public Schools Board of Education,* 2008 WL 2781164 (M.D.N.C. 2008) ("It makes no sense for Plaintiff to argue, as it does, in giving 40,000 documents to Defendants, that 'going through the documents is too burdensome for us, so you do it.'") (*citing, Cleveland Construction, Inc. v. Gilbane Building Co.*, 2006 WL 2167238 (E.D. Ky. 2006)).

---

[13] Defendant does not, <u>at this time</u>, make a specific *Brady* claim, but contends that the case is still relevant. Since the United States has chosen not to provide a more detailed discovery index, Defendant reserves the right to make a *Brady* argument.

21. To be sure, the amount of documents at issue in this case is slightly less than 10,000 pages, not millions, but unlike the Enron case, the documents in question are all in the Spanish language. The United States admits the costs of translation of the remaining documents would be $800,000, a cost it would shift to the defendants, which would, since all three defendants currently in this case are represented by <u>court appointed counsel</u>, in turn, shift to the budget of <u>the Court itself</u>. Moreover, the United States asserts that it would take <u>outside contractors</u> twelve months, an expenditure of time and energy it again would shift to the defendants' counsel and interpreters. Thus, Defendant submits, the burden is similar in nature, if not in sheer scope, to the Enron case, except that the United States now asserts that such an expenditure of time, energy and money would have all been wasted because the documents were <u>worthless</u> in the first place.

IV. DISMISSAL IS AN APPROPRIATE SANCTION

22. The United States suggests that, even if the Court finds that it is guilty of prosecutorial misconduct, dismissal is too severe a sanction (Govt. Oppn at 66-67). The problem with the government's analysis is that the cases it cites, and the analytical framework they espouse, *see United States v. Marshall*, 132 F.3d 63, 69-70 (D.C. Cir. 1998), are premised on a <u>failure</u> to provide discovery. In this case, the discovery "violation," if it can be called that, was in deliberately providing "completely irrelevant" material to the defense. Thus, the traditional sanctions, such as a continuance, would seem inapplicable.

23. Moreover, Defendant asserts that, given the degree of early review which the United States claims to have conducted and fact that no mention of the irrelevance of the nearly 10,000 pages was made until a month and half after the government's hand was forced by the January 28, 2009 Order of Magistrate Judge Facciola, the United States can hardly claim to have acted in good faith.

24. In the civil setting, a court which finds a sanction for "dumping" documents to hinder an opponent appropriate can impose monetary sanctions on the party, and even on counsel personally. No comparable provisions exist to compensate defendants or their counsel for the time and energy wasted in litigating the issues of the "index" and the translations. The thrust of argument of the United States would appear to be that, despite having gotten caught in deliberately dumping the completely irrelevant documents on the defense, that the Court should shrug its shoulders and act as if nothing had happened.[14] Defendant respectfully contends that the Court's hands are not so tied and that dismissal for such outrageous conduct is appropriate.

              Respectfully submitted

              /s/

              Richard K. Gilbert
              Bar. No. 939884
              601 Pennsylvania Avenue, N.W.
              Suite 900, South Building
              Washington, D.C.  20004
              (202) 898-0857

              Attorney for Defendant Martinez Vega
              (Appointed By The Court)

---

[14] Defendant notes that the United States suggests no alternative sanction for its conduct.